**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| SANDRA D. BELT | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| THE GEO GROUP, INC., COUNTY | : | No. 06 - 1210 |
| OF DELAWARE,  DELAWARE | : |  |
| COUNTY BOARD OF PRISON | : |  |
| INSPECTORS, GEORGE W. HILL, | : |  |
| JOSEPH FRANKLIN HENDERSON, and | : |  |
| JOHN AND JANE DOE | : |  |
|  | : |  |
| Defendants. | : |  |

_____:

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                **APRIL 4, 2007**

Plaintiff Sandra D. Belt alleges federal civil rights claims and state law claims arising out of an alleged sexual assault against her by Defendant Joseph Franklin Henderson.  At the time of the assault, Belt was an inmate at the George W. Hill Correctional Facility ("GWHCF") and Henderson was employed as a corrections officer there.  Defendant the GEO Group, Inc. ("GEO Group") is a private company which contracts with Defendant Delaware County Board of Prison Inspectors ("DCBPI") to provide daily functional services at the prison.  Defendant George W. Hill is the Superintendent of GWHCF.

Presently before this Court is the GEO Group's, County of Delaware's, DCBPI's, and George W. Hill's (collectively, "Moving Defendants") Motion for Summary Judgment.  For the following reasons, Moving Defendants' Motion is granted.

**I.      BACKGROUND**

On March 29, 2005, Belt began serving a prison sentence of 11 ½ to 23 months at GWHCF.  On July 25, 2005, the Honorable George Koudelis, Delaware County Court of Common Pleas, granted Belt's petition for work release privileges.  Shortly thereafter, she secured employment at the Fresh Grocer in Drexel Hill, Pennsylvania.  Her sexual assault claims arose in conjunction with the work release program.

Belt claims that on three separate occasions between September and November 2005, Henderson, the supervisor of the work release program, sexually assaulted her.  She also claims that he threatened her not to tell anyone about it.  The evidence provided, however, indicates that Belt reported only one incident that occurred on November 7, 2005.

On that day, Henderson drove the work release van to pick up Belt and several other male work release inmates at the Fresh Grocer.  He drove them back to the prison and first dropped off the male inmates at the building where they were housed.  He then made a U-turn, drove past the security gate and off the prison grounds with Belt still in the van.  He drove to a secluded area where he allegedly sexually assaulted Belt.

Corrections Officer Eugene Jackson, who was posted at the front gate, saw Henderson drop off the male inmates and leave through the security gate.  As Henderson drove past him, Officer Jackson noticed that Belt was in the front seat.  Because he believed female inmates had to be accompanied by a female officer when being transported, he called Corrections Officer Linda Bacci to tell her about the situation.  Corrections Officer Braun was present when Officer Bacci received this call.  Officer Braun called Sergeant Adams, who thereafter contacted Officer Jackson and told him to inform him when Henderson arrived back at the prison.

The next day, on November 8, 2005, Belt informed Sergeant Foltz that Henderson

2

sexually assaulted her.  As a result of her allegation, prison officials contacted the Delaware County Criminal Investigations Division.  On November 9, 2005, Henderson was charged with Institutional Sexual Assault and Official Oppression.  Henderson admitted to having sexual contact with Belt, but he claimed that it was consensual.  On December 20, 2005, following an internal investigation conducted by the GEO Group, Henderson was terminated from employment.  On June 12, 2006, Henderson pled guilty to Institutional Sexual Assault and Official Oppression and was sentenced to 6 to 23 months in prison.

Other incidents of sexual misconduct have been alleged against Henderson.   In 2003, inmate Tracey Fluellen made allegations against him ("Fluellen incident").  After looking into the allegations, the prison concluded that there was "insufficient evidence to substantiate the claims of inappropriate conduct to include sexual assault or an inappropriate relationship. However it is clear Counselor Henderson allowed himself to be placed into situations where he has on several occasions been alone and in close quarters with female inmates."  (Belt's Resp. Mot. Summ. J., Ex. 17).   The prison also concluded that it failed to properly segregate male staff from female inmates, but that deficiency was being rectified.  (Id.).  In addition, prior to working at GWHCF, Henderson was employed as a correctional sergeant at Deep Meadows Correctional Facility in Powhattan, Virginia.  While working there he was charged with making inappropriate sexual advances to a female officer.

Belt filed her Complaint against all Defendants on March 21, 2006.  She filed an Amended Complaint on April 26, 2006.  In her Amended Complaint, Belt alleges claims under § 1983 of the Civil Rights Act, 42 U.S.C. § 1983, and state law tort claims of sexual assault and intentional infliction of emotional distress.  On May 11, 2006, Moving Defendants' filed a

Motion to Dismiss Belt's Amended Complaint.  On June 12, 2006, this Court granted that

motion in part and denied it in part.  Belt's federal claims were not dismissed.  However, the

sexual assault claim against the Moving Defendants was dismissed.  The intentional infliction of

emotional distress claim was dismissed against Delaware County and DCBPI, but remained as to

the GEO Group and George Hill.  The assertion of punitive damages was dismissed against

Delaware County, DCBPI, the GEO Group in its official capacity, and George Hill in his official

capacity, but remained as to the GEO Group and Hill in their personal capacities.  On February

14, 2007, Moving Defendants filed this present Motion for Summary Judgment

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when, after considering the evidence in the light most

favorable to the nonmoving party, no genuine issue of material fact remains in dispute and 'the

moving party is entitled to judgment as a matter of law.'" Hines v. Consol. Rail Corp., 926 F.2d

262, 267 (3d Cir. 1991) (citations omitted).  The inquiry is "whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so one-sided that one

party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

(1986).  The moving party carries the initial burden of demonstrating the absence of any genuine

issues of material fact.  Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362 (3d

Cir. 1992).  "A fact is material if it could affect the outcome of the suit after applying the

substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must

be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"

Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998),

aff'd, 172 F.3d 40 (3d Cir. 1998) (citations omitted).  Once the moving party has produced

4

evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates that there is a genuine issue of fact for trial.  See Big Apple BMW, at 1362-63.  Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.  DISCUSSION

### A.    § 1983 Claims

Belt's § 1983 claims are based on the following allegations.  She claims that Defendants deprived her of her civil rights by: (1) failing to take proper measures to protect her from danger; (2) failing to follow and implement the existing written policy concerning male employees transporting female inmates; (3) failing to thwart Henderson's violation of that transportation policy after he was observed leaving the prison in violation of that policy; and (4) failing to take action upon Henderson's return to prison property on November 7, 2005.  (Belt's Resp. Mot. Summ. J., 19).  Belt also claims that Defendants "recklessly creat[ed] an environment that was unsafe for female inmates, fail[ed] to properly train and supervise prison employees, and continu[ed] to allow the prison to function in a way that places female inmates in danger."  (Id.) For the reasons explained below, Belt cannot establish any § 1983 claims against Moving Defendants.

1. § 1983 Claims against the GEO Group, County of Delaware, and DCBPI

5

Belt has brought § 1983 claims against the GEO Group[1], County of Delaware, and DCBPI under the theory of municipal liability. Municipal liability, however, is not established because there is no evidence of a policy or custom instituted by Moving Defendants that violated Belt's civil rights. Thus, these § 1983 claims do not survive summary judgment.

A municipality can only be found liable where the municipality itself has caused the constitutional violation at issue. City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Respondent superior or vicarious liability will not attach under § 1983." Id. Thus, a municipality cannot be sued under § 1983 solely because it employs an alleged tortfeasor. Bd. of County. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Only when the execution of the government's policy or custom inflicts the injury can there be municipality liability. Harris, 489 U.S. at 385. A municipal policy is a "statement, ordinance, regulation or decision officially adopted and promulgated by [a local governing] body's officers." Simmons v. City of Phila., 947 F.2d 1042, 1059 (3d Cir. 1991) (citing Monell v. N.Y. City Dept. Of Soc. Serv.'s, 436 U.S. 658, 690 (1978)). A municipal custom, which lacks the formal approval of a policy, is such practices that are "so permanent and well settled to constitute a custom or usage with the force of law." Id. (citing Monell, 436 U.S. at 691). The municipality's decisions must also be the "moving force" behind the constitutional deprivation. Graham, 473 U.S. at 166; Grazier v. City of Phila., 328 F.3d 120, 125 (3d Cir. 2003).

Belt argues that genuine issues of material fact do exist as to whether Moving Defendants

---

[1] For purposes of § 1983 claims, the GEO Group, a private company, is acting under the color of state law by providing daily functional services for GWHCF. McCullum v. City of Philadelphia, No. 98-5858, 1999 WL 493696, *2 (E.D. Pa. July 13, 1999) ("[P]rivate contractors who run prisons [act] under color of state law for purposes of § 1983.").

6

maintained improper policies and customs that violated her rights.  She references the Fluellen incident and the prison's investigation into it as evidence that the Moving Defendants were on notice of an allegation of sexual impropriety against Henderson and of the deficiencies in the prison's policies concerning transportation of female inmates.  She also puts forth evidence that Henderson violated this policy and alleges that the prison mishandled the November 7, 2005 incident involving Belt and Henderson.  In sum, Belt argues that this evidence creates factual disputes over whether the prison had inadequate policies to protect her.

The evidence presented by Belt, however, does not constitute a policy or custom that violated her rights as a matter of law.  Her arguments solely develop out of the actions of Henderson and the Moving Defendants' response to his actions in two separate, specific incidents.  Specific incidents such as the handling of the Fluellen incident and Belt's alleged sexual assault, do not establish a policy or custom on the part of the Moving Defendants.  See Wakshul v. City of Philadelphia, 998 F. Supp. 585, 591 (E.D. Pa. 1998) (City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).  "Isolated violations are not the persistent, often repeated, constant violations that constitute custom or policy."  Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984).  Only when there is sufficient evidence of a pattern of violations by a municipal's employee and that municipality knew about them and tolerated them will specific incidents be deemed a municipal custom.  Wakshul, 998 F. Supp. At 591; Gunderson v. City of New York, No. 96-510, 1999 WL 76901, * 4 (S.D. N.Y. Feb. 16, 1999) ("Generally, a violation of a policy by actors below the policy-making level cannot establish municipal liability under § 1983.  There is an exception to this rule if plaintiff can demonstrate that the municipality had notice of, but repeatedly failed to make any meaningful investigation into, allegations of

7

constitutional rights violations.").

Here, the facts presented only show isolated incidents that were not tolerated by Moving Defendants.  First, it is important to note that the prison does have an enacted, written policy with regard to transportation of female inmates by male staff.  (Belt's Resp. Mot. Summ. J. Ex. 15).  Henderson's alleged violation of this policy on isolated occasions is not enough to establish municipality liability.  See id.  Second, Henderson was fully investigated with regard to the Fluellen incident and the prison found insufficient evidence of a sexual assault or an inappropriate relationship with a female inmate.  Third, prison officials promptly contacted the Delaware County Criminal Investigation Division about Belt's November 7, 2005 allegation of sexual assault by Henderson.  This investigation eventually led to the termination of his employment and to his imprisonment.  Thus, these specific incidents involving Henderson do not show a pattern of violations known to the Moving Defendants, but rather only show one mere allegation against him that had insufficient evidence behind it and another one that was fully investigated and resulted in his imprisonment.  Moreover, these incidents also do not show that the Moving Defendants knew of and tolerated these violations by Henderson, but rather show that they were both investigated and not ignored.  Therefore, Belt's 1983 claims fail as a matter of law and summary judgment is granted.[2]

---

[2]         Belt also made generalized claims that Moving Defendant's failed to train or supervise its employees.  There are limited circumstances where an allegation of "failure to train" can be the basis of § 1983 liability.  Harris, 489 U.S. at 385.  Failure to train can only serve as a basis when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Id. at 388.  Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality can it be liable for such a failure under 1983.  Id.  "To survive summary judgment on a failure to train theory, [Belt] must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference."  Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001).  While Belt uses the phrases "deliberate indifference" and "reckless indifference" in her briefs supporting her opposition to this present motion, she provides no evidence to show what was inadequate about the prison employees' training and how this inadequate training was the "moving force" of her assault.  See Graham, 473

2.      § 1983 Claims against George Hill

Belt cannot establish any § 1983 claims against George Hill either in his personal capacity or his official capacity.  Personal capacity suits seek to impose personal liability upon a governmental official for actions he or she takes under color of state law.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Official capacity suits seek to impose liability against the governmental entity for which the official being sued is an agent.  Id.; Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

In all respects other than name, an official capacity suit is treated as a suit against the governmental entity itself.  Graham, 473 U.S. at 166; see also A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 580 (3d Cir. 2004).  The real party in interest is the governmental entity and not the official.  Graham, 473 U.S. at 166.  Thus, "the entity's 'policy or custom' must have played a part in the violation of federal law."  Id.; Hafer v Melo, 502 U.S. 21, 25 (1991).  As explained in the previous section, the governmental entities for which Hill is an official did not maintain a policy or custom that violated Belt's rights. Therefore, Belt has no claim against Hill in his official capacity.

With regard to Belt's claims against Hill in his personal capacity, she can establish supervisory liability by showing that Hill "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm" or, alternatively, by showing that Hill "participated in violating [her] rights, directed

---

U.S. at 166 ("[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation.").  She also provides no evidence of how the prison employees were improperly supervised.  Thus, while Belt briefly mentioned a failure to train and supervise claim, she put no evidentiary support behind these arguments.

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."   Luzerne, 372 F.3d at 586; Benckini v. Coopersburg Police Dept., No. 03-3671, 2004 WL 1686954, *5 (E.D. Pa. July 27, 2004).  Thus, Belt argues that there is evidence creating a factual dispute as to whether Hill acted with "deliberate indifference" and established a policy, practice, and custom that put Belt in a substantial risk of harm.  She cites depositions of prison officials and the investigative results of the Fluellen incident as factual support that Hill was on notice of dangers posed to female inmates and of deficiencies in the prison's policy regarding male staff being in close quarters with female inmates.  Belt's arguments are based on her belief that Hill failed to maintain a policy to protect female inmates.

As stated above, there was no policy or custom that violated Belt's rights.  Therefore, it naturally follows that Hill, as supervisor of the prison, did not establish a policy or custom that violated her rights.  Moreover, there is no indication in the evidence provided by Belt that Hill was personally involved in the assaults on Belt carried out by Henderson or that Hill had any actual knowledge of or acquiescence in these incidents.  Belt does not even indicate any reference to Hill's name in the depositions of prison officials and the investigative results of the Fleullen incident, which she cites as evidentiary support.  Therefore, summary judgment is also granted as to the § 1983 claims against Hill in his personal capacity.[3]

---

[3]      Moving Defendants also assert that Hill, in his personal capacity, is entitled to a qualified immunity.  Qualified immunity is intended to shield government officials performing discretionary functions "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   When a defendant asserts a qualified immunity defense in a summary judgment motion, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."  Id.  Here, Belt has not met its initial burden of showing that Hill's conduct violated her civil rights.  Belt has shown no evidence of any conduct on the part of Hill.

B.    <u>Intentional Infliction of Emotional Distress Claim</u>

Belt's claims of intentional infliction of emotional distress against George Hill and against the GEO Group cannot survive summary judgment.  In regard to George Hill, there is no evidence of any conduct by Hill towards Belt.  Without evidence of any form of conduct by Hill, let alone allegedly "outrageous" conduct, there is no factual dispute as to whether Hill committed intentional infliction of emotional distress against Belt.

With regard to the GEO Group, Moving Defendants deserve judgment as a matter of law because vicarious liability cannot be established by the actions of its employee, Henderson. "[A]n employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment."  <u>Costa v. Roxborough Memorial Hospital</u>, 708 A.2d 490, 493 (Pa. Super. Ct. 1998).  Liability of the employer may also extend to intentional acts or criminal acts committed by an employee.  <u>Id.</u>  An employee's conduct is considered "within the scope of employment" if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.  <u>Id.</u>  However, where an "employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason," the employer cannot be held vicariously liable as a matter of law.  <u>Id.</u>; <u>see also</u> <u>Fitzgerald v. McCutcheon</u>, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979).  An assault committed by an employee upon another person for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and is

11

thus not within the scope of employment.  Costa, 708 A.2d at 493; Fitzgerald, 410 A.2d at 1272.

Here, Belt is trying to impose vicarious liability on Henderson's employer, the GEO Group, because of Henderson's alleged sexual assault of her.  This intentional assault by Henderson is in no way related to the nature and scope of his employment as a corrections officer and supervisor of the work release program.  While Belt argues that "[a] master may be vicariously liable even in the case of assaults committed by the servant," Valles v. Albert Einstein Medical Center, 805 A.2d 1232, 1237 (Pa. 2002), the assault in question, which is a use of intentional force, had to be committed within the scope of employment.  A sexual assault, however, is the type of assault that is so "excessive and so dangerous as to be totally without responsibility or reason" and done for personal reasons, that it was not done to perform the business of the employer and thus is not within the scope of employment.  See  Costa, 708 A.2d at 493.  Therefore, Belt's intentional infliction of emotional distress claim against the GEO Group does not survive summary judgment.

  C. Punitive Damages

Belt also has remaining claims of punitive damages against the GEO Group and George Hill in their personal capacities.   However, because summary judgment has been granted on all §1983 claims and intentional infliction of emotional distress claims, these punitive damages claims fail to survive summary judgment.

In conclusion, this Court grants summary judgment on all claims against Moving Defendants.   Nevertheless, all claims against Defendant Henderson remain.

An appropriate Order follows.

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| SANDRA D. BELT | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE GEO GROUP, INC., COUNTY | : | |
| OF DELAWARE,  DELAWARE | : | No. 06 - 1210 |
| COUNTY BOARD OF PRISON | : | |
| INSPECTORS, GEORGE W. HILL, | : | |
| JOSEPH FRANKLIN HENDERSON, and | : | |
| JOHN AND JANE DOE | : | |
| | : | |
| Defendants. | : | |

_____

**O R D E R**

**AND NOW** this  4th  day of April, 2007, upon consideration of the Motion for Summary

Judgment of Defendants the GEO Group, County of Delaware, DCBPI, and George W. Hill

(collectively, "Moving Defendants"), and the Responses and Replies thereto, it is hereby

**ORDERED** that Moving Defendant's Motion for Summary Judgment (Doc. No. 22) is

**GRANTED**.  The only claims remaining in Plaintiff Sandra D. Belt's lawsuit are against

Defendant Joseph Franklin Henderson.

BY THE COURT:


/s/ Robert F. Kelly
ROBERT F. KELLY,              Sr. J.